181752 Teresa Fortier v. Hartford Life & Accident Insurance Company et al. Good morning. May it please the Court, Counsel, my name is Jonathan Feigenbaum. I represent Dr. Fortier in this matter. Before I continue, may I reserve two minutes for rebuttal, please? Yes, two minutes. Thank you, Your Honor. There is no dispute in this case that I did not file an appeal on behalf of Dr. Fortier within 180 days after the letter dated July 17, 2013, notifying her that her benefits would be terminated, not paid any longer. Why? On September 13, 2013. Would you answer, Judge Thompson? Yes, the answer why? Judge Thompson, the answer is because the adverse benefit decision took place on the date the benefits were terminated, which was September 13, 2013. That is consistent with the definition. So, if the letter itself said you have 180 days from receipt of the letter?      Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay, okay. Okay. Okay. And you disagreed with that? That is correct. Why did not you do something that you had 180 days? Because an appeal was filed within 180 days after September 13, 2013. The prospective notice Why you have not answered the question? The letter plainly states you have 180 days from the decision we're notifying you in the letter. You have a different view of it. Why don't you do something within the 180 days of receipt of that letter? Because the letter... You ran quite a risk that...  The plan uses... Answer the question. Why didn't you file within that 180-day period? Because under the terms of the plan and under the regulation, the adverse benefits... No, no, no. You can say, I read the plan differently. But why didn't you file it within that 180-day time period? Because it's not required under the reading of the plan or the law. I'm not... I'm telling you I read it differently and I look at the Secretary of Labor regulation, which describes an adverse benefit decision as a denial. The denial or termination. The denial or termination does not take place until the benefits are no longer paid. Hartford, for example, could have sent... The benefits are going to be terminated in 15 months. Hartford did not provide an opportunity to an appeal. And they reversed that decision. No, that was after the decision had been reversed, Your Honor. Hartford had first sent notice in September of 2011, stating it would terminate benefits in November of 2011. I filed an appeal on May 12, 2012. Hartford reversed within 10 days. Hartford claimed it reviewed the claim file, but that wasn't accurate. Hartford had decided, based on its internal procedure, notice had not been timely provided. Less than two weeks later, Hartford sends out another letter, June 4, 2012, and says the benefits will be terminated on September 12, 2013. No appeal rights. Something similar happens on July 7, 2012. You submit any information you have showing that this is a cognitive disorder and not a mental health issue, because if it's subject to their mental health clause, you're subject to a 24-month limitation. Right. Information... That's accurate. That is accurate. Congratulations. I'm just trying to understand what... When you first filed your appeal, back in 2011, to the denial, right? It was filed May 12, 2012. That's the first... that's the appeal of the initial denial. Well, it was a termination of benefits. It was termination, so that's an appeal of that. And then 10 days later, they reinstate them. Correct. When you did that first appeal, was the claim that it was a cognitive disorder and therefore the mental health limitations don't apply at all? Did you make that argument? Absolutely. Okay, so then they reinstate them. When they reinstate them, I forget, do they reinstate them subject to a 24-month limit or not? In any way that's clear on the face of what you got back? I would... to answer your question, yeah, the answer is yes. The June 4, 2012 letter says, again, your benefits are limited to 24 months. Okay, so at that point... Yes. Isn't that a denial of the benefit request you made, which is that it wouldn't be subject to a 24-month limit? No, because here's why. Two... a couple reasons. One, when you look through Hartford's internal notes, they never looked at the medical records. What Hartford said was, we fail to give notice of the mental and nervous limitation at the correct time frame. But when they tell you... you said, I'm entitled to benefits that are not subject to a 24-month cap. Correct. They answer back by saying you're subject to a 24-month cap. Isn't that a denial of that benefit request? Well, no, because the benefits were paid for another 15 months. They do not get a denial until the benefits terminate. But that's why I don't understand how this thing works. If you say, I'm entitled to benefits for life, and they say we'll give you them for six months, that would seem like a denial. It's not, Your Honor. You have to wait until they run out six months later, even though you know that they're going to be? Absolutely. Because in the June 4th letter of 2012, in Hartford's letter of June 17, 2013, they both lay out a caveat. The benefits may continue if, A, you're hospitalized, B, you can show us you are physically disabled. But your benefit request was that you would be free of having to make any such showings, because since there was a cognitive disorder, none of those showings would be necessary, I thought. But Hartford kept ignoring. That's why it was a denial at that point. Your Honor, if you look at the regulation in LM4I, and it's laid out in detail in the reply brief, it says adverse benefit determination means any of the following. A denial, reduction, or termination of, or a failure to provide or make a payment for a benefit, including any such denial, reduction, termination, or failure to make a payment. It's all tied to making the payment. But I thought what you're referring to is notice of an adverse benefit determination. That is not, well, I differ with you, because another part of the regulation describes the notice. In H3-1, it says, basically, I'm paraphrasing that, I'll quote it exactly, that no benefit plan will be in compliance if, quote, unless, here's the quote, provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal that determination. The notification is different than the benefit determination itself. That just says the plan, but that presumes that you're not accepting my argument, which is the adverse benefit determination is the cessation of payments. He's got notice of it that that was going to happen in advance of it occurring. That's what notice is. But here's, again, where I disagree. Until it happens, things can change. And if the court holds that this was adequate notification, it leaves the fiduciary in a position, it could send out notices that benefits will terminate almost willy-nilly. There's a reason that the Secretary of Labor's regulation uses the term denial or termination and ties it to payment. And it may sound like a broken record, but in two instances here, at least, and maybe more, every time Hartford would provide advance notification of a termination, which I agree could ripen into a denial, Hartford said if you're hospitalized, if something changes, such as you can prove to us you're physically disabled, benefits may continue. The purpose of tying, or I'll say the policy reason to tie the termination or denial to the cessation of benefits is so there is absolute certainty. Let's say the following happened. In response to the July 4, 2012 letter, Dr. Fortier, let's say she appealed, even though there was no appeal rights in the letter. She appeals, Hartford makes his decision in 45 days, it's done quickly. She files suit because she's going to say I'm still entitled to benefits. Meanwhile, she's still getting paid for conceivably another year, and she's before the court, frankly, wasting, I would suggest, wasting time because an issue is getting litigated. It depends what she wants. If she wants an order that she's entitled to benefits for more than one year, that she wants them for life, it's not a waste of anybody's time. Well, I disagree again. That's what you're claiming. You're not claiming 24 months of benefits. You're claiming benefits for the duration because it's a cognitive disorder. There's no problem with you getting benefits up to 24 months while that suit's running because if you get the order, you're much, much better off. It's totally useful to you. It is, but the benefits are never awarded prospectively forever. You get a judgment that they have to treat it as a cognitive disorder. The mental health limitations don't apply. Any reading of the plan that would be to that effect is wrong. Well, I'm not sure if the court could enter what I call a permanent injunction saying she's cognitively disabled forever because the benefits, typically the individual has to qualify them for them monthly. You just don't get these findings that this is an award to age 65. It would still be as of a particular date that you prevail. Even if it's not a lifetime guarantee, it means that at the timeframe that's relevant to your appeal, it means you could prevail. I understand what you're saying, Judge Thompson, but again, from a policy perspective, it's not a good idea. Are you saying that's because if the benefits were running as of the date the appeal came to us, even though you were seeking benefits for longer than that, it doesn't make any sense for a court to be resolving until benefits are actually terminated? Correct. Is there any case that says that? Because it's an odd way for the regulator. Why are the regulators referring to a notice of termination? On your view, there's no reason for that word. But the notice is tied to adverse benefits. But that's what I'm saying. There's no reason for notice on your reading of it. The word notice is just a redundancy. It's not, Your Honor. I disagree. That means after an adverse benefit decision has happened, a plan to be in minimum requirements has to provide a floor of 180 days to appeal. A plan couldn't say you could have 40 days to appeal. No, but it could just say 180 days from an adverse benefit determination, not 180 days from notice of an adverse benefit determination. That's how you're reading it. But the words are notice of rather than just adverse benefit determination. I agree, but when you provide notice in advance, it's prospective. It may not never ripen into an adverse benefit determination. It's consistent completely with the plan language. But it's going to ripen unless there are some subsequent facts that give rise to a reason for it to be extended. And short of that, short of hospitalization or further medical development, it's going to be a determination as of that date. It may, but then it may not. I mean, I've had situations where someone has been hospitalized under one of these conditions. If I can point to, if you look at pages 506 and 524 of the joint appendix, they both talk about on an appeal, if a claim for benefits is wholly or partly denied, what recourse do I have if my claim is denied? It never talks about the imposition of a limitation, which is what happened here. This was not a denial. It's an imposition of a limitation. And it's talking in terms of denial, which matches the Secretary's regulation word for word. Okay, thank you. Thank you, Your Honor. Good morning, Your Honors. Burr Decker for the defendants with me at the council table. Scott Pomeroy. Your Honor, there's a lot of problems with what the plaintiff is asking you to do here. Probably the most significant one is that it's all but foreclosed by this court's decision in Terry v. Baird Court. Judge Baird, you're exactly correct that the deadline is clear. It's unambiguous. It runs from the date of receipt of the notice. That is in the plan, the policy. It is in the letter as well. This may not end up mattering in this case, but just so I understand how this works, because what troubles me about what happened is somebody makes a request to an insurance company saying, I'm not subject to a mental health limitation. I'm entitled to benefits beyond 24 months because I have a cognitive disorder. That's right. They get back something saying, okay, we're going to reinstate your benefits. So obviously I've appealed, and I've won. And I was required to appeal once. Once for each determination. So the determination on the decision that I was not going to get the benefits that I wanted was denied. I appealed it and won. Correct. Now I get another letter from the insurance company saying, actually, you only get them for 24 months, even though your original claim was, I'm not subject to the 24-month cap. That's right. So then what am I supposed to do as the insured in that circumstance? So the original decision to apply the 24-month limitation was done in 2011. And that's when they made the determination. And that was appealed. And that was appealed. And she won. She got back a letter saying, you won. That's right, because they could not apply that without giving her notice. So Hartford said, we need to give her notice. So that's what we're going to do. So now the 24 months runs from then. So again, she won. It was not adverse. So she can't be subject to a 24-month cap. That's correct. And that's being denied. It had been denied. But when she first gets the letter back, when she first appeals, it's not denied. All she gets is a letter back saying they're reinstated. Doesn't say subject to the 24-month cap, does it? Well, it was always subject to the 24-month cap. Not in her view. Well, she knew that Hartford's determination was to that effect. And then when she gets that first letter back, after having told them it's a cognitive disorder, it's not subject to it? I think so, Your Honor. And the second letter tells her... You know, your stronger ground is the June 4, 2012. You know, if this case were up here without that letter, I think you would have problems. Is Hartford in the habit of not explaining to people why they have won and what it is that they have accepted and what they have rejected? I think that's what that May letter failed to explain. And boy, is that hazardous. And that's why they issued the June 4 letter, Your Honor, to clarify that your claim is still subject. It always has been. It is still subject to the 24-month cap. How does that relate to the requirement to appeal once? She appealed once. That's correct. She gets a letter back saying you won. Correct. Now you get another letter saying, well, actually, maybe you didn't win. They were just clarifying their position that the 24-months continues to apply, except it runs from a new deadline. And so they clarify it's going to continue to be subject to 24 months. And then in July 2013, it provides the adverse benefit determination that they're going to end in September. And there are good practical reasons why they issued that letter two months in advance. So that's a new determination because they had told her in June of 2012, look, if you have any information that this is a cognitive disorder that you think may change our mind, we're willing to accept it. She then submits some further information to you. You do not find that it changes your position. And you say that in July of 2013. And not only that, Your Honor. Can I just add one thing that I just want to make sure I'm straight on? Was there any suggestion that she could provide information that would suggest that the 24-month cap would not apply? I'm not sure I understand your question, Your Honor. Yes, yes. Starting June 4, 2012, and then moving forward, Hartford repeatedly asked them to provide any information to that exact question, that the 24-month limitation does not apply. And they had to do that. Because it's a cognitive disorder, so it's not a mental illness? Yes, Your Honor. And so they accepted, they were willing to make that determination based on anything that the claimant provided. And since they were running the time frame, another 24 months, they needed to update the records. And that's what they didn't get by July of 2013. So the 24-month time frame was running up until September 2013. They continuously tried to get that information to support the notion that this claim should not be subject to this 24-month limitation because it is physical and not a mental illness. None of that information was coming, and so they denied the claim. Is that word physical? Maybe I'm just off. I thought if it's a cognitive disorder, the mental health provision does not apply. That's not necessarily true, Your Honor. I mean, the mental health provision is very broad. I mean, it can be caused by a cognitive disorder that's caused by a mental illness is subject to it. I mean, dementia and delirium are not, but if you read that provision, it's quite broad. So should we, I'm sorry, we're going to ask the same question. No, I'll defer to you. Well, I'm just trying, there's two different things that I understood and I could be wrong. There's a set of arguments one can show that it is not a mental illness for purposes of the mental illness provision. Yes. That's one type of argument. If that's the case, then you just don't look at the mental illness provision and its caps or rules at all for determining benefits. Is that right? No, I think they're merged together, Your Honor. I mean, you have to decide whether it's subject to the mental... Because I broke my foot. I'm not under the mental illness provision. Well, if that's the only thing that disables you, that's right. Okay, is there any type of thing here that there could be a disability of a kind where she would be outside the mental illness thing altogether? I thought that was the initial argument, that she had that kind of ailment. There are several prongs of the limitation that say if you have this, it doesn't count, delirium, Alzheimer's, things like that, yes. And then separately... But not just a cognitive disorder. Okay, and then separately, are there types of arguments that go to your physical conditions even under the mental illness provision? I'm not sure I understand that one, Your Honor. Again, it's a broad provision. If the disability is contributed to by mental illness, it's subject to the 24-month limitation. And again, that whole two-year period was where they were trying to gather that evidence so they could make that decision. So they try, they request after request after request. Nothing, nothing, nothing, nothing. They don't have any evidence, any evidence at all in 2013, which is half of the limitation period. So they make the adverse determination in July 2013. It makes very good sense to do that two months in advance because that gives the person the opportunity to appeal. They have 30 days from receipt of the notice, as you pointed out, to appeal. That's a crystal clear deadline. And then if they get the appealing, they are less likely to have a gap in their benefits if they win. So again, it makes good practical sense to do that two months in advance, which is what they did on both occasions. So because Hartford made a mistake in terms of the procedural notice that it had given to the doctor, Hartford extended the period from 24 months by another basically 17 months, something like that. And it restarted the 24-month period and said we are willing to take any evidence you can give us that this doesn't fall within the mental illness 24 months. That's exactly what happened, Your Honor. And again, the appeal was undisputedly right. The notice was clear. And I think Terry just governs this situation. I mean, Terry says it's not unreasonable or improper to deny a late appeal. A late appeal is a procedural default. And that haphazard waiver of these time limits is going to delude the important interests of consistency and economy that forms the basis for the exhaustion requirement. I think the rule that we deny from Terry, Your Honors, is that when the default is not the cause of anything the administrator did, any sort of improprieties, when there is no claim of futility, when the deadline is clear, where no excuse is given, where the claim is represented by counsel, and here not just any counsel. My good friend, Mr. Feigenbaum, I've known and respected for almost 20 years and have litigated some of the seminal cases of risk of jurisprudence in this court. Under those circumstances, it can't be improper or unreasonable to apply that deadline. I think if an administrator is trying to make a determination with Terry in front of it, I think it does exactly as Hartford did. Let me just go back to the thing that, and I don't know that it matters, but I just want to make sure I understand it. The mental illness limitation, as I read it in your opponent's brief, quoted, says if you are disabled because of mental illness that results from any cause or condition that may result from mental illness. So that's one part of it. And then it says separately, that's assuming it is, you are disabled because of mental illness. The second part of it says, this is on page 7 of the blue brief. Benefits will be payable for as long as you are confined in the hospital, otherwise placed licensed to provide medical care. And if not confined, for all such abilities, during your lifetime for a total of 24 months. My question is, when the letters go back out saying, do you have any other information? Was that information about whether you are confined in a hospital, otherwise licensed to provide medical care for the disabled condition? Or was that letters, those letters, including language that went to the threshold question of, are you disabled because of mental illness that results from any cause or condition that may result from mental illness? It could have been either. That's a good answer, because as an insured, I'd like to know what it is you're asking. So does the letter make clear which of the things was being asked of the insured? I don't have the letter in front of me, your honor. But again, the burden of showing entitlement to benefits is on the claimant. Yes, but the burden of making it clear what they're supposed to do in response to communications from the insurer is on the insurer. And I don't think there's any doubt about the clarity. You just told me that you don't know what it said. I just don't have the letters in front of me, your honor. I mean, I can't quote the language, but it was crystal clear. Crystal clear what? That it could have been either in the sense that it was clear that both were being asked about. It is clear that any argument that they wanted to make, any evidence that they wanted to provide to entitle her to benefits beyond the 24 months was what Hartford was willing to provide. And Terry talks about that, your honor. I mean, Terry talks about, you don't have to tell them how to perfect their claim. That's not what the regulatory requirements are. The regulatory requirements are sufficient notice so that judicial review can take place. I don't think there's even an argument that Hartford did not provide sufficient notice pursuant to the DOL regulations or the policy. And again, Terry speaks to that. I mean, you don't have to say, you must give me this to win your case. That's not what the requirements are. And again, Terry speaks to that quite clearly. I don't know if you want me to get into the, again, if you have a problem, Terry is governing. I think you would also have to, to do it, Mr. Feinman asked you have to create a circuit split. Even if you did over Terry, because at least three circuits have held that the deadline should be enforced under circumstances like this. The Foley case on the 7th, including the Edwards case on the 7th, which is particularly instructive, because the court there rejected every single one of these claims that does that issue here. Including substantial compliance, which again is good for the goose, good for the gander. So just so you get what the bottom, on the joint appendix page 799, this is the long letter. September 13th, 2011. They say. So that was the first one. Yeah, the first one says, please immediately provide us with any evidence of disabling physical conditions or hospitalizations that may have occurred during the payment of your claim. That relates, it seems to me, not to the threshold question, but to the second part pretty clearly. No, it couldn't. It's the identical language of the second part of the definition. And then it says, we will review any information provided and determine whether additional benefits may be payable. I don't know what that exactly is referring to. And that's what I just find is just confusing going forward about how insurers are supposed to understand what's being said to them, what's being asked of them for what kind of information when their claim is a threshold argument of whether they're subject to the mental health limitation at all. Anyway. Thank you. There's a number of matters I'd like to address real quickly. One, I want to follow up on what Judge Barron raised and said, oh, if I break my foot, of course that's not a mental health claim. No, but if you become thoroughly depressed and you can't go to work and you get gangrene or something, it could lead to a mental illness issue, right? It absolutely happens, even if the person isn't that depressed. I had this happen the other day with a woman who was going blind. The insurer said, oh, we received treatment with a psychologist. We decided you're depressed, you're under the 24-month mental limitation. And I actually wrote and said, is this an adverse benefit determination? It's not hard for a different insurer. And they won't respond. That's what's bothering me is what happens in these situations when the plaintiff, the insured is saying, I'm not subject to the mental health limitation. The insurer says that you are. And then the insurer is just responding by saying, give me more information as if you are under it. Well, this is what happens. And this is what happened in this case. Because I provided all the medical records possible on the first appeal to explain how Dr. Fortier had suffered an infection, was very ill for a month. And her psychiatrist concluded in the summer of 2009 that she was suffering from a cognitive disorder. And so did some subsequent neuropsych testing. There was no way to go back in time now, four years later, to come up with some new records to show that the basis of her claim was not a cognitive disorder. Meanwhile, I mean, in her strict reading of the claim. No, wait a minute. She was under continuing medical treatment, as I understood. That is correct. She expressly asked for all records of her continuing medical treatment and any other information pertinent to its determination that thus far she had not shown that this was anything other than mental illness subject to the 24-month limitation. May I respond, Your Honor? Yes. Thank you. You best. Yes. She went to the same treating psychiatrist who would fill out the same attending physician form, and he never wavered and said that she was impaired for any other reason other than cognitive disorder. Okay. All right. You're in the merits of it now, but you've got to convince us that the notice of 180 days and your failure to comply with it can be excused. If you want me, okay. It all hinges on that an adverse benefit determination has to be the cessation of payments. That's one argument. The other is substantial compliance, if you allow me to speak. Okay. May I continue? Go ahead. Yes. So substantial compliance, it has to be a two-way street. It's judicially created, and when plans come before the court, and this happens with regularity. I cited it to at least three instances of Hartford making appeal decision late. The plan always says substantial compliance because the plan doesn't want to be stripped of discretion. Okay. You have limited time. We have read your brief. We understand the sauce for the goose, sauce for the gander argument. Do you want to argue your other ground, notice prejudice? I would like to raise a few words about that. Notice prejudice, I would suggest, is a subpart, actually, of substantial compliance. Under New Hampshire law, there is no doubt that notice prejudice, the burden falls completely on the insurer. In a typical non-ERISA claim, let's say my house burns down and I file a claim and the insurer says send in proof of loss. I send in proof of loss, and the insurer says that's not enough. I send in more information. That is close to an appeal. The insurer says that's good, but we need some more information. I send in more. The continuing dialogue is equivalent of an appeal for a RISA case where there has been an adverse benefit determination. Okay. Thank you. Thank you, Your Honor. Any further questions? Nicely, the court has no further questions for you. Thank you both. Thank you. Thank you.